UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

SHALENA CARTER                              :        CIVIL ACTION NO

VERSUS                                      :

                                            :        MAGISTRATE

RONALD MENARD, PRESIDENT VERMILION PARISH POLICE JURY
MIKE COUVILLION, VERMILION PARISH SHERRIFF
WARDEN KIRK FIRTH, VERMILION PARISH JAIL
VERMILION PARISH POLICE JURY
LISA STEWART, MEDICAL ASSISTANT/NURSE VERMILION PARISH JAIL
LEE HARRELL, RICHLAND PARISH SHERIFF
JOEL WEATHERLY, WARDED RICHLAND DETENTION CENTER
ROY FOX, ACTING WARDEN RICHLAND DETENTION CENTER
KOBY O'NEAL, MEDICAL SUPERVISOR RICHLAND DETENTION CENTER;
RICHLAND DETENTION CENTER

/////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////
**COMPLAINT FOR DAMAGES**
/////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

The complaint of SHALENA CARTER hereinafter, sometime referred to as

Petitioner/Plaintiff, a person of full age and majority and domiciled in the Parish of Vermilion,

State of Louisiana, with respect represents:

**<u>JURISDICTION</u>**

1.

Jurisdiction is founded on 28 U.S.C. § 1331. The plaintiff further invokes jurisdiction of

this Honorable Court, under 28 U.S.C. § 1367 to adjudicate claims arising under the Laws of the

State of Louisiana including but not limited to Article 2315, et. Seq., of the Louisiana Civil

Code.

## VENUE

2.

Venue lies in this Court under 28 U.S.C. § 1391 (b) (2), as the events giving rise to this claim occurred within this judicial district and one of the named defendants is within a judicial district

## DEFENDANTS

3.

Made Defendants herein are:

A.    KIRK FRITH, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, Warden of Vermilion Parish Correctional Center, at all times applicable hereto, was duly appointed and employed by the Parish . all actions taken by them were in the course and scope of  his employment with the above described entities.

B.    MIKE COUVILLON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY Sheriff of Vermilion at all times applicable hereto, was duly appointed and employed by the Parish, all actions taken by them were in the course and scope of his employment with the above described entities.

C.    RONALD MENARD INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, as President of the Vermilion Parish Police Jury.

D.      VERMILION PARISH POLICE JURY;  on information and belief, an independent

governmental entity, existing by virtue of the Laws of the State of Louisiana; who funds the

operations of the Vermilion Parish Detention Center and establishing policy with regards to the

administration of medical treatment in the facility.

E.      LISA STEWARD, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY, employed

as a Medical Assistant/Nurse for the Vermilion Parish Jail;

F.      MYRIAM HUTCHINSON INDIVIDUALLY AND IN HER OFFICIAL CAPACITY,

employed as a Physician for the Vermillion Parish Detention Center;

G.      RICHLAND DETENTION CENTER, Rayville, Louisiana, on information and belief, the

Richland Detention Center is a Foreign Corporation, operating and doing business in the State of

Louisiana pursuant to a contractual relationship with the Richland Parish Sheriff's Department.

H.      JOEL WEATHERLY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, Warden

of the Richland Parish Detention Center, at all times applicable hereto, was duly appointed and

employed by the defendant, all actions taken by them were in the course and scope of his

employment with the above described entities.

I.      CAPTAIN ROY FOX,  – INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY,

Temporary Warden/ Supervisor of the Richland Parish Detention Center, at all times applicable

hereto, was duly appointed and employed by the defendant, all actions taken by them were in the

course and scope of his employment with the above described entities.

J.      KOBY O'NEAL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, employed as

a Medical Supervisor/Paramedic for the Richland Parish Detention Center; at all times applicable

hereto, was duly appointed and employed by the defendant, all actions taken by them were in the course and scope of his employment with the above described entities.

## **THE FACTS**

4.

CARTER was arrested on or about September 14, 2015 was incarcerated as a pre-trial detainee in the Vermilion Parish Detention Center.

5.

CARTER'S  bond was set sufficiently high as to prohibit her from bonding out of jail. She remained in the Vermilion Parish Detention Center until her conviction.

6.

At the time of her incarceration she had been diagnosed with stage 3to 4 COPD and was diagnosed with a bad gallbladder and was scheduled for gallbladder removal.

7.

At the time of her arrest she was under the medical care of:

1.      Primary Care Physician, Dr. Claude Meeks and was prescribed:

A.      Dexilant twice a day, for acid reflux

B.      Hydrochlorothiazide once a day, for fluid retention

C.      Amithiza, twice a day for stool softener

D.      Motoprolol once a day for blood pressure

E.      Antibiotics as directed for infection

      F.     Steroids for maintance inflammation

2.    Dr. Malek, Pulmonary Specialist - For COPD

      A.     Advair, twice a day - For COPD

      B.     Pro-Air FHA Inhaler, as needed for breathing - For COPD

      C.     Galiresp, three times a day - For COPD

      D.     Albuterol Sulfate and Ventolin to be added to breathing treatments four times a day - For COPD

      E.     Oxygen Tank, as needed for oxygen - For COPD

3.    Dr. Sean Graham, Pain Management

      A.     Tizanigine, three times a day - Muscle Relaxer

      B.     Zanax, twice a day -

      C.     Amitrittyline, once a day - sleeping Aide

      D.     Oxycodone, four times a day - Pain

          for her conditions.

4.    Roland Miller-Orthopedist

8.

At the time of her arrest CARTER advised the authorities at the Vermilion Parish Detention Center that she was under the care of Dr. Malek, Dr. Meeks and Dr.Graham and was prescribed all medications listed in paragraph 9, and for her conditions of COPD and Gallbladder.

9.

During the period of her incarceration with the Vermilion Parish Detention Center she was refused prescribed medication was initially only provided with Ibuprofen.   CARTER had previously advised that she was allergic to Ibuprofen; however this report was ignored.

10.

In spite of the warning CARTER was administered Ibuprofen and had an allergic reaction to the medication.  The reaction caused severe swelling of her face, neck, throat and esophagus. She was not provided with alternative medicine; nor did the agents for the facility make adjustments to the medication or attempt to investigate the cause of the swelling of the face, throat and esophagus.

11.

At some point CARTER was given a laxative (in lieu of stool softener) because of her gall bladder issues.  She was maintained on the laxative for a period of seventy days.  which caused volatile diarrhea and dehydration until the physician realized the error and put her on a proper stool softener.  As a result of the dehydration she would regularly lose consciousness.

12.

Within the first 60 days of her incarceration,  she began to experience volatile vomiting with blood.  CARTER voiced/wrote her concerns to the Lisa Steward who indicated that she talked too much.  Subsequently she was given Omeprazole as an antacid, but continued to throw up regularly during her period of incarceration with the Vermilion Parish Detention Center.

13.

CARTER was required to clean her jail cell with chemicals provided by the Vermilion Parish Detention Center.  The chemicals were caustic which aggravated her COPD.  She experienced nausea and shortness of breath. As a result she  experienced dizziness, heart palpitations and on occasions fainted from lack of oxygen.

14.

Several complaints were made and grievance filed.  Her fellow inmates advised medical personnel that she was ill and needed treatment.  She advised that her physician had previously indicated that some of her symptoms were a result of her gallbladder and that removal was recommended.  One of the medical assistants advised that she would have to prove to him that she was suffering from the gallbladder.  And if it were proven that he would direct the jail to provide treatment.

15.

On or about May 4th she was convicted of two counts third offense DWI and sentenced to the Louisiana Department of Corrections.

16.

She was transferred to the Richland Detention Center in Rayville, Louisiana on or about May 5, 2015.

17.

At intake CARTER was asked to provide a list of medications and treating physicians which was provided to the facility. Shalena Carter did provided  a medical  information sheet listing her physicians and prescribed medications to KOBY O'NEIL, Medical Attendant at the Richland Department of Corrections, and upon review she was told that the Department of Corrections was not going to pay for it,  she was denied medical treatment.

18.

CARTER was made aware at some point that the list of medications and medical information was not in the file.  She was advised that the document was thrown away; however, even if the document was not intentionally thrown away it was not placed in her file, retained for reference or treatment provided.

19.

CARTER provided a supplemental list of medication and medical history to the facility; however, at no time was she ever provided any of her prescribed medication or offered assistance of her conditions.

20.

CARTER became increasingly ill.  She was housed in a smoker's dormitory with about 60 smokers. She was told by several guards the only non-smoking part of the facility was in isolation. The smoke caused shortness of breath and further aggravated her COPD because she was not taking any medication for the condition.

21.

Further, acerbating her condition was that the air conditioners broke regularly and the vents were dirty.  When the air conditioning units did work they would blow dust into the facility, causing Shalena to have difficulty breathing.

22.

Spiders and Spider Webs were commonly seen through the facility. Items such as band aids were found in the food. Feminine Hygiene namely sanitary napkin products were not

provided to the inmates. Showers, Sinks and Toilets were often broken and Inmates were not allowed to shower regularly. The dormitory was overpopulated. The only time these items were addressed was when DOC conducted inspections, at that time these items were temporarily corrected.

23.

Several complaints were made and grievance filed by CARTER and her fellow inmates. She was advised that she had a debt to pay to society and that if they had to send her home in a body bag that they would accommodate her.  At no time did CARTER ever see a doctor while incarcerated at Richland Detention Center.

24.

On or about September 26, 2015, Shalena was released from incarceration.  She was advised that her medical insurance had lapsed during her incarceration.   She was able to self treat for some time because of medicine that she had prior to her arrest and incarceration.

25.

Upon receiving confirmation that her insurance had been reinstated she made an appointment with Dr. Meeks.  Dr.  Meeks referred  her immediately to Dr. Westen.  Shalena was seen by with Dr Westen on or about October 23, 2015, and immediately sent to the Abbeville General Hospital for emergency gallbladder removal.  This was the first of two surgeries. During the surgical intervention her lung collapsed because of the neglected COPD condition. As a result of her condition she was placed on life support.

26.

On or about October 29th, 2015, while still on life support she was transferred to Our Lady of Lourdes Hospital, where a second surgery was performed to remove the remaining infection from the gallbladder. She was placed back on life support on or about November 1st, 2015.

27.

She remained in intensive care on life support November 25th, 2015.  She was released from the hospital on or about December 5, 2015.

## CAUSE OF ACTION-CIVIL RIGHTS VIOLATIONS AGAINST VERMILION PARISH DETENTION CENTER AND ITS AGENTS

28.

The allegations 04 through 27 are reiterated by reference.

29.

Defendants, KIRK FRITH, MIKE COUVILLION, RONALD MENARD,  LISA STEWARD, MYRIAM HUTCHINSON were in violation of the Fifth And Fourteenth Amendments to the Constitution of the United States and for failing to protect the CARTER'S right to be free from *cruel and unusual punishment.*

30.

When the Vermilion Parish Detention Center and its agents failed to provide proper medical care to CARTER there were significant implications within the context of the Fourth and the Fourteenth Amendment.

31.

The elements necessary to support a due process violation in this context is that Carter had a serious medical condition;   the authorities at the Vermilion Parish Correctional Facility were made aware of this serious medical condition and  that they consistently and repeatedly failed to address the medical condition or take reasonable measures or remdial measures to address the concern and that failure to act caused significant harm to Carter.

32.

AUTHORITIES failed to adequately protect the interests of the decedent while she was in there care and custody.

33.

The AUTHORITIES failed to take adequate steps to steps to evaluate and ignored the repeated pleas for assistance by Carter.

34.

Petitioner CARTER because she was held in custody pending trial is entitled to adequate medical treatment.

35.

Carter had been diagnosed with COPD and with noted that she would have to have her gallbladder removed at the time of her incarceration.  Her treating physicians mandated a course of treatment and these treatment options were ignored in their entirety.

36.

The medical staff at the Vermilion Parish Detention Center were made aware of her diagnosis and refused to act on the information.

37.

However, it was obvious to her fellow prisoners that she was suffering and that she was in immediate need of medical attention.  It should have been more obvious to the medical staff that there were not adequately providing care and causing needless suffering.

38.

The mere fact that she was repeatedly throwing up; complaining of blood and had experienced extreme swelling in the face, neck and esophagus was sufficient to put any reasonable person on notice.

## CAUSE OF ACTION-CIVIL RIGHTS VIOLATIONS AGAINST RICHLAND DETENTION CENTER AND ITS AGENTS

39.

The allegations 04 through 27 are reiterated by reference.

40.

Defendants, KOBY O'NEAL CAPTAIN ROY FOX JOEL WEATHERLY, RICHLAND DETENTION CENTER are in violation of the Eight Amendment to the Constitution of the United States and for failing to protect CARTER and her right to be free from *cruel and unusual punishment.*

41.

When the Richland Detention Center failed to provide proper medical care to CARTER there were significant implications within the context of the Eight Amendment

42.

The elements necessary to support a due process violation in this context is that Carter had a serious medical condition;   the authorities at the Richland Detention Center were made aware of this serious medical condition and  that they consistently and repeatedly failed to address the medical condition or take reasonable measures or remedial measures to address the concern and that failure to act caused significant harm to Carter.

43.

AUTHORITIES failed to adequately protect the interests of the decedent while she was in there care and custody.

44.

The AUTHORITIES failed to take adequate steps to steps to evaluate and ignored the repeated pleas for assistance by Carter.

45.

Petitioner CARTER is entitled to be free from cruel and unusual punishment.

46.

Carter had been diagnosed with COPD and with noted that she would have to have her gallbladder removed at the time of her incarceration.  Her treating physicians mandated a course of treatment and these treatment options were ignored in their entirety.

47.

Carter provided a list of medication and treatment recommendations on not less than two (2) occasion.  There first was lost, destroyed or misfiled.  The latter was completely ignored.

48.

However, it was obvious to her fellow prisoners that she was suffering and that she was in immediate need of medical attention.  It should have been more obvious to the medical staff that there were not adequately providing care and causing needless suffering.

49.

During her period of incarceration, she was unable to sleep because of the aggravated conditions she was experiencing.  She was repeatedly throwing up (blood), was not able to breathe because of the aggravation and non treatment of the COPD, she was dizzy and required the assistance of fellow inmates because of her repeated falling and stumbling, her abdomen was visibly distended and she was in constant pain.

50.

As her condition worsened she was not able to eat regular food.  She was only allowed

broth, cereal and milk.  The fact that the detention center recognized that she could not eat

regular food was sufficient to put the facility on notice  that she was a very ill woman.

## INDIVIDUAL LIABILITY OF WARDEN, SHERIFF AND POLICE JURY PRESIDENT

51.

The allegations 04 through 27 are reiterated by reference.

52.

The KIRK FRITH, MIKE COUVILLION, RONALD MENARD CAPTAIN ROY FOX

JOEL WEATHERLY can incur individual liability only in a limited number of circumstances.

53.

Under *secti*on 1983, supervisory officials are not liable for the actions of subordinates on

any theory of vicarious liability." "he implements unconstitutional policies that causally result in

the constitutional injury."

54.

To establish supervisor liability for constitutional violations committed by subordinate

employees, the plaintiffs must show that the supervisor acted or failed to act with deliberate

indifference to the violation of others' constitutional rights committed by their subordinates.

Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious

consequence of his action." *Porter v. Epps,* 659 F.3d at 447.

55.

The "policies and practices" authorized by the supervising defendants in that they disregarded the known consequences of his actions and they were the proximate cause of the constitutional injuries set forth herein.

56.

The actions of the supervising defendants were deliberate and conscious choices to endanger constitutional rights of its citizens.  See _Roberts vs. City of Shreveport_, 397 F.3d 287

## OFFICIAL CAPACITY LIABILITY AND GOVERNMENT LIABILITY

57.

Section 1983 applies to governmental agencies like the Vermilion Parish Police Jury and RICHLAND when the execution of a government policy or custom inflicts the injury that the government as an entity is responsible.  Vermilion Parish and adopted a policy with the deliberate indifference to its known and obvious consequences and the municipality was the moving force behind the constitutional violation. _See Monell vs. Department of Social Services_, 436 U.S. 658.

58.

Government liability attaches when plaintiffs identify an officially adopted or promulgated policy or when a custom or practice that is not written or formally adopted, but that is a pervasive, longstanding practice that has the force of law.

59.

The Supreme Court has held that in certain situations, the decisions or the acts of a final policymaker, even if only on a single occasion, may be attributed to the entity for liability purposes under Section 1983.

60.

CARTER avers that the there is longstanding policy of denial of medical treatment because of the costs attributed to the financial institutions.  CARTER acknowledges that there may be costs associated with the treatment; however, to completely deny medical care because of the fear of expense violates the fundamental principals of due process and results in cruel and unusual punishment.

61.

Whether it was expressly or tacitly approved by the VERMILION POLICE JURY or RICHLAND PARISH is on no monument to the plaintiff.  Municipal liability attached when there is no oversight into the violations that are being committed.

62.

VERMILION PARISH POLICE JURY and RICHLAND PARISH, its management and administrative officials were aware of several prior instances of where medical care was being denied.

## THE INJURIES

### 63.

As a direct consequence of these actions by Defendants, Petitioner was deprived of his liberty, suffered and continues to suffer from the rapid advancement of the COPD because of the neglect caused by Vermilion Parish Detention Center and the Richland Parish Detention Center.

### 64.

The constitutional rights of SHALENA CARTER under the Fifth, Eighth and Fourteenth Amendments, were clearly established and well known to any reasonable person.

### 65.

The above violations and torts were committed as a result of the policies, customs and procedures' of DEFENDANT'S OR THEIR AGENTS, upon information and belief it was the policy, custom and practice to deny medical treatment because of the costs.

### 66.

The Defendants subjected the plaintiff to these deprivations of his rights, either intentionally or maliciously, or by acting with a reckless disregard for whether SHALENA CARTER's rights would be violated by their actions. Further, the individual Defendants had no reasonable basis for believing their conduct was lawful and as such are not entitled to qualified immunity.

### 67.

The above described conduct constitutes one or more violations of 42 USC 1983 et. seq.

CAUSE OF ACTION-STATE LAW CLAIMS

68.

The denial of due process and the cruel and unusual punishment caused injury to

SHALENA CARTER by DEFENDANT'S was committed through gross acts and wanton

negligence of OFFICERS as follows by failing to provided adequate medical care under the

circumstances, where they had been advised and visibly saw that the petitioner's condition was

worsening and employing inhumane procedures resulting in a denial of due process and cruel

and unusual punishment and in failing to do what they should have done and see what they

should have seen to avoid pain and suffering to SHALENA CARTER;

69.

As the employer Vermilion Parish and Richland Parish as defendants are responsible

under the legal doctrine of Respondent Superior for all the damages and injuries occasioned

herein by the negligence of its employees who at all times material hereto operating within the

course and scope of their employment with the Parishes of.

70.

RICHLAND PARISH and VERMILION PARISH are liable independently for its

negligence in failing to care for the detainees and prisoners in their custody.  Where their policies

are set to arbitrarily deprive individuals of medical treatment because of cost.

71.

The supplemental jurisdiction of the court is hereby involved pursuant to Section 1367 of

Title 28 USC to assert the following causes of action. Petitioner incorporates all the allegations

of the previous articles herein. The allegations herein including medical attention, negligent and intentional infliction of emotional distress, cruel treatment, violations of Petitioner's rights actionable under the laws of the State of Louisiana and were the proximate and legal causes of the injuries sustained by Petitioner, entitling her to damages as are just in the premises.

<u>DAMAGES AND HARM-ALL COUNTS AND CAUSES OF ACTION</u>

72.

The above conduct of the Defendants was the cause (direct and proximate) of the harm to SHALENA CARTER  and the resulting damages as described subsequently.

73.

As a result of the above described incident, SHALENA CARTER   suffered immense

1.       Needless pain and suffering;

2.      Denial of medical treatment;

3.      Advancement of life threatening illness;

4.      Fear and anxiety;

5.      Loss of life and enjoyment of life;

6.      Prolonged hospiltization;

7.      Medical expenses.

8.      Denial of Due Process;

9.      Cruel and unusual punishment.

74.

The injuries to CARTER  are the result of the sole, combined and/or solidary fault, vicarious liability, strict liability and/or negligence of Defendants and/or joint tortfeasor(s) and/or his/its/their or as principal(s), employer(s), agent(s), representative(s), servant(s), employee(s), associate(s), parent(s), subsidiary(s), lessor(s), lessee(s), insured(s), insured(s) and/or insurer(s) in violation of La. Civil Code Arts. 2315, 2315.1, 2315.2, 2315.6, 2317 and LA R.S. 9:2800. As a result of the sole, combined and/or solidary fault, vicarious liability, strict liability and/or negligence of Defendants, SHALENA CARTER, suffered general and/or punitive damages (where applicable by law), including but not limited to physical pain and suffering, mental anguish and/or distress, fear, embarrassment, humiliation, and other damages that will be shown at the trial.

75.

As a result of the injuries SHALENA CARTER , Plaintiff has suffered and/or will suffer general and/or special and/or punitive damages, against the defendant's in their individual capacity, including but not limited to, great inconvenience, frustration, humiliation, embarrassment, loss of enjoyment of life and society, loss of love and affection, loss of consortium, mental anguish and/or distress, mental pain and suffering, loss of companionship, grief and funeral expenses. Plaintiff also prays for attorney's fees pursuant to 42 U.S.C. § 1988.

76.

Petitioner, CARTER, respectfully represents that she is entitled to the following damages from Defendants who are liable (in solido or otherwise) as a result of the acts and misconduct alleged previously for:

A.      Compensatory damages against Defendants and each of them, insolido, in the amount to be determined at the trial;

B.      Treble, exemplary and/or punitive damages against Defendants insofar as the law provides, in an amount to be determined at trial;

C.      The cost of this action, including attorney's fees; and

D.      Such other and further relief as this court may deem appropriate.

77.

Petitioner, SHALENA CARTER, requests trial by jury on all matters so triable.

WHEREFORE, Petitioner, SHALENA CARTER , prays that the defendants be served in accordance with law, with a certified copy of this petition and duly cited to answer same and that after legal delays and due proceedings are had, that there be Judgment in favor of SHALENA CARTER , against the Defendants, ,  jointly, several and insolido for all sums that are due as allowed by law, including all court costs and expert fees, including legal interest thereon, until paid and for such other and further legal and equitable relief as the court may deem necessary, proper and reasonable.

AND FOR ALL GENERAL AND EQUITABLE RELIEF.

RESPECTFULLY SUBMITTED:
J. CLAY LEJEUNE
ATTORNEY AT LAW, L.L.C.,

/S/ J. Clay LeJeune

_____

J. CLAY LEJEUNE (NO. 26068)
POST OFFICE BOX 1919
CROWLEY, LA 70526
337-788-1505
337-788-1518 (FAX)
jclaylejeune@cox-internet.com