# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| SHALENA CARTER | CIVIL ACTION NO. 16-0611 |
| VERSUS | UNASSIGNED DISTRICT JUDGE |
| KIRK FRITH, ET AL. | MAGISTRATE JUDGE WHITEHURST |

## MEMORANDUM RULING

Before the Court in this civil rights action is a Motion for Partial Summary Judgment filed by the following Defendants: Lee Harrell, former Sheriff of Richland Parish; Joel Weatherly, Warden of Richland Parish Detention Center; and Roy Cox, Temporary Warden/Supervisor of Richland Parish Detention Center. [Doc. 47]. Pursuant to the motion, Defendants seek dismissal of Plaintiff Shalena Carter's claims, brought pursuant to 42 U.S.C. § 1983, alleging she was denied access to medical treatment while incarcerated at the Richland Parish Detention Center ("RPDC") in violation of her rights under the Eighth Amendment to the United States Constitution. For the reasons that follow, the motion is **GRANTED**.

## I. Factual and Procedural Background

On or about September 14, 2014, Carter was arrested for driving while intoxicated ("DWI") and was incarcerated at the Vermilion Parish Correctional Center ("VPCC") pending trial. On May 4, 2015, Carter pleaded guilty to third offense DWI and was sentenced to one year of imprisonment. On May 5, 2015, Carter was transferred to the Richland Parish Detention Center ("RPDC"), where she remained until her release on September 26, 2015.

At the time of Carter's arrest, she was under the care of several physicians for gastrointestinal issues, COPD, high blood pressure and cervical disc disease.[1] Carter additionally "was diagnosed with a bad gallbladder and was scheduled for gallbladder removal." [Doc. 1 at ¶ 6]. At the time of her arrest, Carter was prescribed inhalers, oxygen on an as needed basis, and multiple prescription medications. According to Carter, she advised VPCC that her physician had previously indicated that some of her symptoms were a result of her gallbladder and that removal of her gallbladder had been recommended. Carter provided VPCC with a list of her medications, but VPCC refused to provide Carter with her prescribed medications. Carter contends VPCC denied her "medical treatment for COPD, blood pressure and for what was ultimately determined to be a chronically diseased gallbladder." [Doc. 43-11 at 1]. At the time of her transfer to RPDC, VPCC was treating Carter with Omeprazole for GERD and Colace, which is a stool softener. Carter contends these medications failed to provide any relief of her symptoms.

According to Carter, during intake at RPDC she immediately provided prison officials with a list of her prescribed medications, advised officials she had not been receiving same at VPCC, and further advised she was experiencing pain and discomfort due to the lack of treatment at VPCC. Carter alleges at intake her stomach was distended, her face was swollen and she was unable to keep down solid food. Carter states she was introduced to Koby O'Neal, the paramedic assigned to her dormitory, almost immediately upon entry into RPDC. Due to the unavailability of a bed, she was initially placed in solitary confinement. O'Neal was the only official who made contact with Carter during the initial period of isolation. Throughout her detention at RPDC, Carter's primary contact

---

[1] Prior to her arrest, Carter had been declared physically disabled by the Social Security Administration due to cervical disc disease and fourth stage COPD.

with health care professionals employed by the institution was through O'Neal. She interacted with O'Neal almost daily, as he provided her medications and addressed her numerous medical complaints. Carter contends O'Neal remained unsympathetic to her medical needs during her entire term of incarceration, refused to assist her in obtaining medical treatment, and ignored her health complaints.

Upon Carter's release from RPDC, she immediately set up an appointment with Dr. Claude Meeks, her primary care physician, and was subsequently examined by him on October 8, 2015. In light of her symptoms, Dr. Meeks immediately referred Carter for additional testing and an ultrasound. On October 21, 2015, Carter was seen by Dr. Weston Miller (a general surgeon), who diagnosed her with Acute and Chronic Cholecystitis. Two days later, Dr. Miller performed a laparoscopic cholecystectomy, thereby removing Carter's gallbladder. Carter asserts during surgery she contracted pneumonia and was placed on life support. On October 29, 2015, Carter had a second surgery to remove additional infection from her gallbladder. After the second surgery, Carter's lung collapsed, which she attributes to "the neglected state of [her] lungs after not having received any medication for the one year that [she] was incarcerated." [Doc. 43-11 at 3]. Thereafter, Carter went into a coma and remained on a ventilator and life support for several weeks. Carter remained in the intensive care unit until November 25, 2015. She was released from the hospital on December 5, 2015.

On May 4, 2016, Carter brought this suit against multiple defendants employed by VPCC, alleging violations of her Constitutional rights, as well as claims of negligence under Louisiana state law. Carter additionally brought claims against the Vermilion Parish Police Jury and its President, Ronald Menard, for violations of her rights under the Fifth, Eighth and Fourteenth Amendments to

the United States Constitution. [Doc. 1 at ¶ 29]; on March 30, 2017, the Court dismissed Carter's claims against Ronald Menard and the Vermilion Parish Police Jury [Doc. 24]. Finally, Carter brought claims against Harrell, Weatherly, Cox and O'Neal (i.e., the RPDC defendants) for violations of her Eighth Amendment rights and for state law negligence.

On November 14, 2017, O'Neal filed a motion for partial summary judgment seeking dismissal of Carter's section 1983 claim. [Doc. 41]. On February 1, 2018, the Court denied O'Neal's motion, finding in pertinent part as follows:

> [T]he Court finds Carter has demonstrated by competent summary judgment proof that there is a genuine issue of material fact with regard to whether O'Neal was deliberately indifferent to Carter's serious medical needs. Carter has pointed to evidence in the record showing O'Neal was aware of the risk of serious harm to Carter by way of her intake health screening, numerous complaints, and objective symptoms. She has further pointed to evidence in the record showing O'Neal refused to assist her in obtaining medical treatment and ignored her complaints. Accordingly, the motion for summary judgment is DENIED.

[Doc. 54 at 13-14 (internal citation omitted); *see also* Doc. 55].

The Court now addresses the Motion for Partial Summary Judgment filed by O'Neal's supervisors - Defendants Harrell, Weatherly, and Cox. [Doc. 47]. Pursuant to their motion, Defendants seek dismissal of Carter's section 1983 claim, asserted against Defendants in their individual and official capacities, alleging Defendant's violated Carter's rights under the Eighth Amendment to the United States Constitution by denying Carter proper medical care while incarcerated at RPDC.[2]

---

[2]Defendants do not address Carter's claim of state law negligence in their motion and supporting brief, and therefore, that claim remains pending for trial.

## II. Standard of Review

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)(alterations in original)(quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

**III.   Law and Analysis**

Title 42 U.S.C. section 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . ." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In this matter, Carter contends Defendants, acting under color of state law, violated her Eighth Amendment right to be free of cruel and unusual punishment.

The Eighth Amendment of the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.[3] "Prison officials violate the Eighth Amendment's ban on cruel and unusual punishment when they show deliberate indifference to an inmate's serious medical needs." *Grogan v. Kumar*, 873 F.3d 273, 277 (5th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "A

---

[3]The Eighth Amendment is made applicable to the States by the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 101 (1976).

serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Non-life-threatening injuries constitute a serious medical need where the injuries induce severe pain. *Thomas v. Carter*, 593 Fed.Appx. 338, 342 (5th Cir. 2014) (citing *Gobert* at 349; *Harris v. Hegmann*, 198 F.3d 153, 159-60 (5th Cir. 1999)).

Deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 836 (2012); *see also Id.* at 835 (Deliberate indifference "describes a state of mind more blameworthy than negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."). To show a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a plaintiff must prove: (1) objective exposure to a substantial risk of serious harm; and (2) prison officials acted or failed to act with deliberate indifference to that risk. *Gobert* at 345-46 (citing *Farmer* at 834); *see also Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). "The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the jail officials were actually aware of the risk, yet consciously disregarded it." *Lawson* at 262 (citing *Farmer* at 837, 839). A showing of deliberate indifference requires a plaintiff to "submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert* at 346 (citation and internal quotation marks omitted).

A.   **Personal Capacity Claims**

Personal capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v.Melo*, 502 U.S. 21, 25 (1991). To establish personal liability in a section 1983 action, a plaintiff must show "that the official, acting under color of state law, caused the deprivation of a federal right.'" *Id.* (quoting *Graham*, 473 U.S. at 166). Supervisory officials are not liable for the actions of subordinates under any theory of vicarious liability. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Rather, supervisory officials may only be held liable if: (1) they were personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Id.* at 304; *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Dilworth v. Box*, 53 F.3d 1281 (5th Cir.1995) (quoting *Thompkins* at 304).

To succeed on a claim of failure to train or supervise, a plaintiff must show: (1) officials inadequately supervised or trained their officers; (2) there was a causal relationship between the failure to train or supervise and the alleged violation of the plaintiff's constitutional rights; and (3) such failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001). "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Id.* Generally, a plaintiff must demonstrate a pattern of similar violations. *Id.* The inadequacy of

training "must be obvious and obviously likely to result in a constitutional violation." *Id.*

In this matter, Plaintiff does not allege these Defendants affirmatively participated in any act resulting in a violation of her constitutional rights. Accordingly, it appears Plaintiff is attempting to hold Defendants liable in their supervisory capacities. However, Plaintiff makes no argument with regard to Defendants' supervision or training of Koby O'Neal, nor does she make any argument regarding a pattern of similar violations. Rather, the only fault alleged with regard to these Defendants are Plaintiff's conclusory statements that Defendants implemented a policy or practice whereby RPDC relied upon "the unqualified opinion of a medical [sic] without evaluation by a doctor," and Defendants implemented a policy of denying access to medical treatment "because of the inconvenience that it may cause to the detention center." [Doc. 60 at 14, 21-22]. However, Plaintiff points to no evidence in support of these assertions. As Plaintiff has failed to point to evidence in the record showing these Defendants were personally involved in the alleged constitutional violations, has failed to point to evidence showing Defendants inadequately trained O'Neal, and has failed to point to evidence showing there existed a pattern of similar violations at the facility, her claims against these Defendants in their individual capacities must be dismissed for failure to meet her evidentiary burden of showing a genuine issue of material fact exists warranting trial.

### B. Official Capacity Claims

A suit against a state or municipal officer in his or her official capacity is treated as a suit against the entity itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Accordingly, Carter's claims against former Sheriff Harrell, Warden Weatherly and Roy Cox in their official capacities are

treated as claims against Richland Parish.[4] *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 392 (5th Cir. 2000); *Keele v. Guajardo*, 71 Fed.Appx. 369, 370 (5th Cir. 2003) (citing *Brooks v. George County, Miss.*, 77 F.3d 834, 841 (5th Cir.), *withdrawn and superceded on other grounds*, 84 F.3d 157 (5th Cir. 1996)). Under section 1983, local governments cannot be held liable on a theory of respondeat superior. *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 691 (1978). Rather, municipalities can be found liable under section 1983 "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *see also Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016). Stated differently, such liability is available only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell* at 694; *see also Canton* at 385.

To succeed on an official capacity claim, the plaintiff must establish: (1) an official policy, (2) promulgated by the municipal policymaker, (3) that was the moving force behind the violation of a constitutional right. *Hicks-Fields v. Harris County, Texas*, 860 F.3d 803, 808 (5th Cir. 2017); *McGregory v. City of Jackson*, 335 Fed.Appx. 446, 448 (5th Cir. 2009). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Hicks-Fields* at 808 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). In this matter, Plaintiff has identified "no

---

[4]To be liable in one's official capacity under § 1983, the defendant must have been delegated policy-making authority under state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Under Louisiana law, the sheriff is a final policymaker for his parish's jail and may be sued in his official capacity. *Thompkins v. Belt*, 828 F.2d 298, 304 n.8 (5th Cir. 1987); *Craig v. St. Martin Parish Sheriff*, 861 F.Supp. 1290, 1301 (W.D.La. 1994) (citing La. Const. Art. 5, § 27; La. R.S. 33:1435). Defendants do not dispute Warden Weatherly and Roy Cox are final policymakers for RPDC. Accordingly, the Court will treat Weatherly and Cox as final policymakers for purposes of this motion.

official written or otherwise specially articulated policy upon which [s]he can rely." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir.2009). Thus, it appears Plaintiff relies on the third category of municipal liability, thereby attempting to prove official policy through a persistent and widespread practice. Accordingly, Plaintiff must demonstrate there existed "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)). Additionally, Plaintiff must establish "'[a]ctual or constructive knowledge of such custom' by the municipality or the official who had policymaking authority." *Hicks-Fields* at 808 (alteration in original) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)). In the Fifth Circuit:

> Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.

*Id.* at 808-09 (quoting *Bennett* at 768).

To support her argument that her constitutional rights were violated through a widespread practice of Richland Parish, Carter asserts: "[T]he actions of Koby O'Neal were in furtherance of a policy or practice that was created or supported by Sheriff Lee Harrell, Warden Joel Weatherly and/or Warden Roy Cox" [Doc. 60 at 5-6]; "Harrell created a policy or custom where it was impossible for O'Neal to provide adequate treatment for the prisoners," *id.* at 8; "O'Neal and/or Harrell implemented a policy where a prisoner who was in need of medical attention was denied the

attention because of the inconvenience that it may cause to the detention center," *id.* at 14; and "[t]he policy of Harrell to rely on the unqualified opinion of a medical [sic] without evaluation by a doctor manifests deliberate indifference to the medical needs of Carter," *id.* at 21-22. The only evidence Carter cites in support of the foregoing arguments is her affidavit and deposition testimony. However, Plaintiff's testimony is only relevant with regard to the actions of Koby O'Neal, as her testimony contains no discussion of any official policy or widespread practice of Richland Parish officials, nor any reference to these Defendants at all. Were this Court to hold the proffered evidence sufficient to establish an official policy of Richland Parish, it would effectively find the Parish to be liable on a theory of respondeat superior for the alleged actions of O'Neal, which is expressly prohibited by *Monell*.

Essentially, through her motion Plaintiff argues O'Neal controlled her environment, and that she filed grievances complaining about her deteriorating health that went unanswered. However, Plaintiff has pointed to no evidence in the record showing a persistent, widespread practice of denying inmates at RPDC access to medical treatment, nor has she pointed to evidence in the record showing these Defendants had actual or constructive knowledge of any such widespread practice. *See Burge* at 370 ("isolated acts" generally cannot establish the existence of a custom or practice); *Thompkins*, 828 F.2d at 305 (where plaintiff failed to point to evidence that jail's treatment system had failed to deliver necessary and appropriate medical care to any inmate other than plaintiff, and there was no evidence in the record showing the jail's policy for inmate medical treatment was constitutionally defective, sheriff could not be liable on the theory he implemented an unconstitutional policy); *Medina v. Ortiz*, 623 Fed.Appx. 695, 700 (5th Cir. 2015)(where plaintiff failed to identify a pattern of similar occurrences, official capacity claim against sheriff was properly

dismissed on summary judgment). As Plaintiff has failed to meet her evidentiary burden of showing a genuine dispute of material fact as to the existence of an official policy or custom of Richland Parish policymakers to deny inmates access to medical care, her claims against these Defendants in their official capacities fail.

### III. Conclusion

For the reasons set forth above, the Motion for Partial Summary Judgment [Doc. 47] submitted by Defendants Lee Harrell, Joel Weatherly, and Roy Cox is **GRANTED**. Accordingly, Plaintiff's section 1983 claims brought against the foregoing Defendants in their individual and official capacities are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ___2___ day of March, 2018.

_____
**DONALD E. WALTER**
**UNITED STATES DISTRICT JUDGE**